Argued April 1, reversed and remanded May 20, 1924.

# STATE v. GEORGE STONE.

(226 Pac. 430.)

**Criminal Law—Evidence That Defendant's Attorney Induced Removal of Witnesses from State Inadmissible.**

1. Admission of testimony showing that defendant's attorney induced a witness to take other state's witnesses out of the state to avoid testifying was error, in the absence of proof that defendant authorized or approved it.

**Criminal Law—Restriction of Purpose of Testimony Admitted Without Objection Held Error.**

2. If, as claimed, objection to testimony that defendant's attorney induced witnesses to leave the state was not sufficient to render admission of the testimony erroneous, defendant had the right to overcome it with contradictory testimony, and the court erred in restricting its application to the credibility of the attorney as a witness.

**Criminal Law—Whether to Order Preliminary Inquiry into Defendant's Ability to Defend Self-discretionary.**

3. In the absence of statute, whether to order a preliminary inquiry to determine defendant's mental competency to make a rational defense was discretionary with the court, and not reviewable, in absence of any application for such an inquiry.

**Criminal Law—Only Error, Legally Excepted to, is Reviewable.**

4. Only error, legally excepted to, is reviewable.

**Criminal Law — Defendant's Attorney cannot Argue Defendant's Mental Incapacity not Shown by Evidence.**

5. Defendant's attorney, not having shown defendant's mental incapacity, the court properly struck out statement in argument that defendant, because of his mental condition, had been unable to render any assistance during or prior to trial.

**Infants—State's Burden of Proof in Prosecution for Contributing to Delinquency Stated.**

6. In a prosecution under Section 2150, Or. L., for contributing to a female child's delinquency, the state must allege and prove the girl unmarried and under eighteen years of age, commission of the act charged, and that it was such as to manifestly cause the child to become delinquent.

**Criminal Law—Reversible Error to Leave Question to Jury and Then Withdraw It as One of Law.**

7. In a prosecution under Section 2150, Or. L., for contributing to a child's delinquency, instruction leaving the question whether defendant's act tended to cause the child to become delinquent to the jury, and an instruction telling them, as matter of law,

that it did so tend, were contradictory, constituting reversible error.

**Criminal Law—Contradictory Instructions Constitute Reversible Error.**

8. Contradictory instructions constitute reversible error.

**Indictment and Information—Since Court will Judicially Notice Matters of Law, State Need not Plead Them.**

9. The state need not plead a matter of law in its accusation, since the court will judicially notice it.

**Infants—Whether Defendant's Manipulation of Genitals Tended to Cause Delinquency for Jury.**

10. In a prosecution, under Section 2150, Or. L., for contributing to delinquency of a female child, whether defendant's manipulation of the child's genitals tended to cause her to become delinquent was for the jury, and the court erred in charging that it had such tendency.

**Criminal Law—Court must not Interfere With Legitimate Functions of Jury.**

11. Even extreme cases do not justify judicial interference with legitimate functions of the jurors, to whom our system of government commits decision of questions of fact.

From Lane: G. F. SKIPWORTH, Judge.

Department 1.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. H. E. Slattery* and *Mr. Walter B. Jones,* with an oral argument by *Mr. Slattery.*

For respondent there was a brief and oral argument by *Mr. Clyde N. Johnston.*

BURNETT, J.—The indictment in this case is for the commission of an act which manifestly tends to cause a child to become a delinquent. It is averred that the child in question was an unmarried female of the age of eight years and, in substance, that the defendant manipulated her genitals and that this act was one which manifestly tended to cause her to become a delinquent child. On the plea of not guilty,

the defendant was convicted and from the ensuing judgment has appealed.

One class of the assignments of error relates to testimony about inducing witnesses for the prosecution to go to California in order to avoid being present at the trial. When the mother of the child was on the witness-stand for the prosecution, the following occurred:

"Q. What if any conversation did you have with Mr. Jones in his office when you went up there about this case?

"A. Mr. Jones was my attorney when I got the money from my husband's death, and I thought perhaps he didn't know whether my little girls were in this, and I did not know whether he would take the case.

"Q. That is what you went to talk to him about?

"A. Yes, sir.

"Q. Do you recall that this case was set for trial at the last term of court?

"A. Yes, sir.

"Q. When was it that the little girls and yourself went down to California?

"A. September.

"Q. In September; and how did they happen to go to California?

"Defendant's Attorney: That is objected to as immaterial.

"District Attorney: I propose to show that it was through his control.

"The Court: Objection overruled.

"Defendant's Attorney: Note our exception.

"Q. How did they happen to be sent to California?

"A. To get out of the trial.

"Q. Who made the arrangements with you to send them down there?

"A. Well, by Mr. Jones."

Any fair construction of the testimony and proceeding thus narrated indicates that they referred to

Mr. Jones who was of counsel for the defendant and was called as a witness on behalf of the defendant. Upon his cross-examination by the district attorney he was asked if he did not pay the mother of the child certain specified sums of money to induce her to take the prosecuting witnesses out of the state. All of this he denied. The mother was recalled to the stand and, over the objection of the defendant that it was irrelevant, immaterial and incompetent, was permitted to testify again that Jones had paid her money to take the children out of the state. In charging the jury with respect to the testimony about the money transaction between Jones and the mother of the child the court said:

"In this connection this testimony can be considered by you only for the purpose of weighing the testimony of the witness, Walter B. Jones, and to be considered by you for that purpose and no other purpose, as affecting his credibility and going to the weight you shall give his testimony, and as affecting his motive and his credibility as a witness."

The defendant, by his counsel, excepted to this instruction.

1, 2. It was error to admit to the hearing of the jury the testimony about taking the witnesses out of the jurisdiction without also showing that it was done by the authority or with the knowledge and consent of the defendant. This principle is established by the case of *State* v. *Day*, 22 Or. 160 (29 Pac. 352). The authorities are cited and collated more amply in *State* v. *Rader*, 94 Or. 432, 444 (186 Pac. 79).

In avoidance of the application of this principle, however, the prosecution contends that the objection that the testimony about taking the children to California was immaterial is not sufficient to raise the question and exclude the testimony. Be that as it

may, if the objection was insufficient, the whole of that transaction was open to inquiry and the case was allowed to proceed as if Jones had authority thus to represent the defendant in that matter. In that view of the case, it became a material question of fact whether Jones did procure the transportation of the witnesses to California. The state put in its testimony on that subject and for the purposes of the dilemma, we will assume that it had a right to produce that testimony. On that theory the defendant had a right to overcome that with contradictory testimony and the jury was entitled to consider it for whatever it might deem it to be worth on the full question of whether or not the witnesses were induced by or on behalf of the defendant to absent themselves from the trial. The court had no right to restrict the application of that testimony merely to the purpose of discrediting Jones and affecting the weight of his testimony. Hence on this branch of the case, it is clear that if properly objected to, the testimony about abducting the witnesses was error unless it was also made to appear that the defendant authorized or approved it. If confirmation of his approval was waived, then it was competent for the defendant to meet the testimony by contradictory evidence and the court could not limit it to the subordinate feature relating to the mere weight of his testimony. It was error to admit the testimony about taking the children to California without also showing that it was authorized by the defendant or, if the exception was not sufficient to raise the objection to the testimony, it was wrong as the court did to restrict its effect.

3, 4. A further assignment of error is to the effect that the court erred in proceeding with the trial of

the defendant without first having determined whether or not he was mentally competent to make a rational defense. We have no statute regarding such a preliminary procedure. The most that can be said is that it rests in the discretion of the trial court to order such a preliminary inquiry. The record, however, is barren of any indication that the defendant, either in person or by counsel or next friend or otherwise, applied to the court to conduct such an inquiry. In that state of the record we cannot consider the question because it is not error alone, but error legally excepted to which can be considered on appeal. In the case of *State* v. *Foot You,* 24 Or. 61 (32 Pac. 1031, 33 Pac. 537), the court, following *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309), and *State* v. *Tamler,* 19 Or. 528 (25 Pac. 71, 9 L. R. A. 853), said:

"If a party desires to raise a question in this court as to the competency of evidence offered in the trial court, or of any other supposed irregularity of that court either of omission or commission he must at the time make his objection and thereby obtain a ruling of the court, and, if adverse, he must save an exception, and bring it here by a proper bill of exceptions."

5. This doctrine has been followed consistently ever since. The only thing occurring at the trial in relation to this subject was during the argument of counsel for the defense before the jury, wherein he asserted in substance that the defendant, because of his mental condition, had been absolutely unable to render any assistance to his counsel during the whole trial and prior thereto. The district attorney objected to that statement and the court ruled that there was no evidence to support it and ordered it stricken out and taken from the consideration of the jury.

To this ruling the defendant excepted. According to the record, the court was clearly right on that subject. The statement of counsel was gratuitous and not supported by any evidence in the record.

6, 7. In charging the jury respecting the contents of the indictment, the court said:

"The next material allegation which the state is required to prove beyond reasonable doubt is that [the girl mentioned in the indictment] is an unmarried female child under the age of eighteen years and that the defendant committed the act charged in the indictment which I have read and that act, if committed at all, was such as to manifestly cause the said child to become a delinquent child. These are the material allegations the state is required to prove beyond a reasonable doubt before you would be warranted in convicting the defendant. If you have a reasonable doubt as to the truth of the charge or a reasonable doubt as to any of the material allegations to which I have called your attention, then it would be your duty to return into court a verdict of not guilty * * and if you further find beyond a reasonable doubt that the act manifestly tended to cause the said child to become a delinquent child, it would be your duty to return a verdict of guilty as to the charge in the indictment."

Thus far, no objection was made nor can one be made to the charge of the court, but the trial judge went further in his instruction immediately succeeding the portion mentioned, and said:

"I charge you that this indictment charges an act which manifestly tends to cause a child to become a delinquent child."

8. In the first place, in respect to the instructions, the last clause quoted is contradictory of the preceding portion already set out. In the first excerpt the court required proof that the act manifestly tended

to cause the child to become a delinquent. In the last clause, however, the judge took that from the jury and supersedes the necessity of proving it by himself stating that the act described manifestly has the tendency condemned by the statute. In one part of his charge he treats the matter as one of fact to be established by the testimony. In the other part the same question is treated as a matter of law to be decided by the court and taken from the jury. Contradictory instructions constitute reversible error: *Morrison* v. *McAtee*, 23 Or. 530 (32 Pac. 400) ; *Malloy* v. *Marshall-Wells Hdwe. Co.*, 90 Or. 303, 327 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589).

Section 2150, Or. L., under which the indictment was framed, reads thus:

"In all cases where a child shall be a delinquent child as defined by any statute of this state, any person responsible for, or by any act encouraging, causing or contributing to the delinquency of such child, or any person who shall by threats, command, or persuasion, endeavor to induce any child to do or perform any act or follow any course of conduct which would cause such child to become a delinquent child, or any person who shall do any act which manifestly tends to cause any child to become a delinquent child, shall be guilty of a misdemeanor, and upon trial and conviction thereof shall be punished by a fine of not more than $1,000, or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment."

9. The indictment, as it must to be a good pleading, sets out all the elements of the statutory crime and avers that the doings of the defendant "were then and there an act which manifestly tended to cause the said child to become a delinquent child." Having alleged this matter, it is incumbent upon the state to prove it like any other averment of fact. If it is a

matter of law as the court assumed to say, there was no need of stating it in the accusation for the court will take judicial notice of the law without pleading it. But this element of the crime is not in the category of facts assumed to be known to the court as laid down in Section 729, Or. L., of which evidence need not be produced.

10. The arts of seduction are so variant and insidious, especially when applied to different individuals, that it is impossible as a matter of law to lay down any rule on the subject of what will or will not invariably tend to produce delinquency in all minors. An act which might lure one child into the paths of sin might prove repulsive and abhorrent to another, working out an exactly opposite effect.

The statute has not defined any particular act as one which, as a matter of law, shall be deemed manifestly to tend to cause delinquency in a child. On questions of morals like those which are within the purview of the statute and more or less conventional, and consequently beyond the scope of exact definition, it is not practical in legislation precisely to describe an act which shall be *malum prohibitum*. Treating the matter in hand, the law-making branch of the government has wisely refrained from entering upon a task so impossible. No judge has the right to supplement the work of the legislature by supplying a definition of his own declaring any particular act to be criminal which is not so condemned by legislative enactment. If it is to be left to the trial judge to say whether as a matter of law any act manifestly has the pernicious tendency mentioned, there will soon be as many kinds of delinquency factors as there are judges; for what may jar upon the moral standards of one may not incur the displeasure of another. We

constantly find individual jurors and different juries taking widely divergent views of testimony, but judges should be in position to speak with one mind as to the law. This cannot be if each one may piece out the statute according to his own ideas.

11. Moreover, the statement complained of is too sweeping and general. It takes no account of circumstances or persons or their relations to each other. It condemns alike the sexual pervert in his lewdness, the mother bathing her nursing babe and the surgeon performing a necessary operation involving the sexual organs. In view of the diverse factors that enter into such cases, it becomes a question of fact to be left to the jury, as safely it may be, to determine from all the circumstances of the case as disclosed by the testimony whether the act, charged in the indictment as a fact to be proved, has the tendency condemned by the statute. The challenged instruction was a palpable invasion of the province of the jury. No judge ought to allow his outraged sense of decency as a man to carry him into the jury-box. Even extreme cases do not justify judicial interference with the legitimate functions of the twelve jurors to whom as the tribunal peculiarly of the people our system of government has committed the decision of questions of fact.

The judgment of conviction is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

McBRIDE, C. J., and RAND, J., concur.

COSHOW, J., concurs in the result.