WYATT V. STATE OF INDIANA

[No. 29,349. Filed April 5, 1956.]

*Clinton H. Givan,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *John E. Hirschman,* Deputy Attorneys General, for appellee.

ACHOR, J.—On December 27, 1951, the appellant was charged by indictment with the crime of murder. A plea of not guilty because of insanity was filed and the court appointed two physicians, R. A. Solomon and Earl W. Mericle, to examine the defendant. After a hearing, the court made its finding for defendant on his plea of insanity, and he was accordingly committed to the Dr. Norman .M. Beatty Memorial Hospital until such time as he shall have comprehension sufficient to understand the proceedings and make his defense.

On May 6, 1955, on recommendation of the hospital staff, the trial court ordered the appellant returned for trial. On May 13, 1955, appellant was arraigned for trial and entered the following pleas: (1) Not guilty, and (2) not guilty upon the ground that at the time of the alleged commission of the crime appellant was of unsound mind, "but that he has since been restored to sanity and is entitled to discharge." The court again appointed the same two physicians to examine the appellant.

The State answered the second paragraph by plea of general denial. Upon the issues thus formed the cause was set for trial by jury. On July 26, 1955 the jury returned the following verdict:

"We the jury, find the defendant, Albert Wyatt, committed manslaughter as covered by the indictment but not guilty because at the time of the commission of the act as charged in the indictment he was insane."

Thereafter, on July 28, 1955, a hearing was had to the court on the question as to whether or not appellant was sane or insane at the time of trial, and as to whether or not the recurrence of a like attack of insanity was highly probable. Evidence was concluded on July 29, at which time appellant filed a motion for release from custody, which motion was overruled, and the court made the following finding on the original questions:

". . . at the time of the trial of this cause the defendant was and is sane but is in a period of remission and the occurrence of such an attack of insanity as occurred, October 6, 1951 is highly probable; and the court orders defendant committed to the Dr. Norman Beatty Hospital, Maximum Security Division."

Thereafter, on August 5, 1955, the appellant filed his motion for new trial, which was overruled on the same date. The transcript of the record was filed in this court on November 2, 1955.

Appellant has assigned as error the overruling of his motion for new trial in which he asserted as error the following grounds: (1) Overruling of appellant's motion for release; (2) the finding of the court is contrary to law; (3) the finding of the court is not sustained by sufficient evidence.

Under the above assignments of error, the essential issue presented is the sufficiency of the evidence to sustain the verdict.

However, at the outset appellee contends that this appeal was not timely filed. It is necessary that we dispose of this jurisdictional question before considering the case on its merits. Appellee's contention is based upon the fact that the appeal was not filed within 90 days of the order of commitment on July 29, 1955. It is appellee's contention that this is a special statutory proceedings in which no provision is made for the formation of issues, that none are contemplated and that the proceedings is not a trial to which a motion for new trial may be addressed.

Within the well established definition of the term, ". . . A trial is an investigation under the direction and control of the state for the purpose of discovering the truth and establishing the facts upon which the sentence of the law may be pronounced. . . ." *Chicago, etc., R. Co.* v. *Collins* (1924), 82 Ind. App. 41, 53, 142 N. E. 634, 143 N. E. 712; *State ex rel. Talkington* v. *Hoffman, Judge* (1947), 225 Ind. 475, 477, 76 N. E. 2d 252; §2-1901, Burns' 1946 Repl. (Acts 1881 (Spec. Sess.), ch. 38, §371, p. 240).

In this case, the effect of the decree was not merely to deny appellant a release from under the former

commitment, as contended by appellee. The decree, by operation of the statute, denied the appellant of his liberty for a fixed period of not less than two years. The proceedings was a "trial" within the terms of the above definition. Therefore, appellant was entitled to have the proceedings re-examined upon motion for new trial, unless the special statute which created the proceedings also expressly provided for a different method of judicial review, which appellee concedes does not exist.

The controlling statutes in this case are as follows:

"If, in any criminal action, the court or jury trying the cause finds the defendant not guilty on the ground of insanity, the court shall find as to the defendant's sanity at the time of the trial, and if the court shall find that the defendant is insane at the time of the trial, he shall order the defendant, whether male or female, committed to the division for the maximum security of the Dr. Norman Beatty Memorial Hospital; or if he shall find that the defendant is sane at the time of trial, but the recurrence of such an attack of insanity highly probable, he shall order the defendant committed as above provided. Such person shall be confined in such hospital until released as hereafter provided." §9-1704a, Burns' 1942 Repl. (1953 Supp.) (Acts 1951, ch. 238, §1, p. 682).

"At any time after two (2) years from the date of said commitment any person so confined in a hospital for the insane may file his or her application to be discharged, in the court from which they were committed, and upon satisfactory proof being made to such court of the restoration of the sanity of such person and that the recurrence of such an attack of insanity is improbable, the court shall order his or her discharge from such institution, and enter a final judgment discharging him or her: Provided, however, That a second or subsequent application for discharge shall not be made within five (5) years from the time of any previous application." §9-1705, Burns' 1942 Repl. (Acts 1913, ch. 298, §5, p. 774; 1927, ch. 102, §2, p. 268).

We next consider appellant's assigned error that the evidence was not sufficient to sustain the finding of the court that ". . . the recurrence of . . . an attack of insanity . . . is highly probable." The evidence in this case consists of the testimony of four very able physicians and psychiatrists,—Drs. Mericle, Hull, Solomon and Weimer. All of them were in agreement that statistical surveys indicate the probability of recurrence of insanity in schizophrenia cases is 60 to 66 per cent. Drs. Mericle and Solomon who had examined the appellant only once in 1952 and again in 1955, and Dr. Hull who examined him only once in 1955, refused to apply this statistical method as a basis for expressing an opinion as to the probability of recurrence of insanity in the case of this particular appellant. Their observations and opinions were limited to the history of recurrence in schizophrenia cases generally as a class.

Statistical surveys regarding human behavior are valuable for many purposes, but they cannot in themselves be made the basis of depriving any man, innocent before the law, of his liberty, without at least applying the general information to the particular individual whose liberty is placed in jeopardy by the proceedings.[1]

However, in this particular case we are not only confronted with the failure of the above expert witnesses to apply general statistical information to this appellant, we are here confronted with the fact that the only witness who attempted to apply the facts to this particular appellant testified that a recurrence was not probable. Dr. Weimer of the Dr. Norman

[1] According to the National Association for Mental Health, the chance among all Amercians as a class is that nearly one in ten will be hospitalized for a severe mental illness, and that more than half the patients in mental hospitals are suffering from schizophrenia.

Beatty Memorial Hospital analyzed the statistical method of calculating the probability of the recurrence of insanity as applied to the appellant as follows: (1) That the figure 66 per cent recurrence was based on patients discharged three to six months after recovery; (2) that 78 per cent of the recurrences occur in the first year after recovery; (3) that appellant "had been well at least two years"; (4) that the "probability it will recur again (in appellant) . . . is less than 25%."

Also, Dr. Weimer testified as to the probability of recurrence in appellant on the basis of his close personal observation of the appellant for a period of six months and a consideration of appellant's entire record. On the basis of this observation and appellant's record, Dr. Weimer stated his opinion on the matter of possible recurrence as follows: ". . . he . . . has been recovered for at least two years, and I don't think it will ever recur again. I have to be honest and realize there is that possibility but in this individual case, I personally don't feel it will recur."

Section 9-1704a, *supra,* authorizes the court to recommit the appellant only if the recurrence of insanity is "highly probable." Webster's unabridged dictionary defines *high* as of "relatively great degree" and *probable* as "having more evidence for than against; supported by evidence strong enough to establish presumption, but not proof, of its truth; as, to make out a *probable* case. . . ."

We submit that there was no evidence of probative value to establish a presumption of relatively great degree that *this appellant,* whose liberty is here at stake, would suffer a recurrence of insanity.

We conclude, therefore, that the court erred in overruling appellant's motion for new trial. Judgment is

ordered reversed with instructions to sustain appellant's motion for new trial.

Bobbitt, C. J., Arterburn, Emmert and Landis, JJ. concur.

NOTE.—Reported in 133 N. E. 2d 471.